UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
CHARLENE ROMERO,

                    Plaintiff,

       -against-

PERSON CENTERED CARE SERVICES, INC.,
and LORNA AVILA, individually,

                    Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

Docket No.: 20-cv-2476

<u>Jury Trial Demanded</u>

    CHARLENE ROMERO ("Plaintiff"), by and through her attorneys, BORRELLI & ASSOCIATES, P.L.L.C., as and for her Complaint against PERSON CENTERED CARE SERVICES, INC. ("PCCS"), and LORNA AVILA, individually, (together, where appropriate, as "Defendants"), alleges upon knowledge as to herself and her own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

    1.    This is a civil action for damages and equitable relief based upon willful violations that the Defendants committed of Plaintiff's rights guaranteed to her by: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("NYCRR") tit. 12, § 142-2.2; (iii) the NYLL's requirement that employers furnish employees with wage statements containing specific categories of accurate information on each payday, NYLL § 195(3); (iv) the NYLL's requirement that employers furnish employees with a wage notice containing specific categories of accurate information upon hire, NYLL § 195(1); and (v) any other claim(s) that can be inferred from the facts set forth herein.

1

2.      Defendants are PCCS - - a Staten Island-based non-profit corporation that competes in the marketplace with other for-profit entities to provide services through the New York State Office for People with Developmental Disabilities ("OPWDD"), Self-Direction program - - and Avila - - a participant in the OPWDD Self-Direction program and the mother of a person with developmental disabilities who received care through OPWDD.  Plaintiff worked for PCCS and Avila as one of a group of caregivers / "Direct Support Professionals" who provided care for Avila's child in Avila's home and outside of her home at various day habilitation facilities, from June 1, 2016 until on or around November 21, 2019.  At times throughout Plaintiff's employment, Defendants willfully failed to pay Plaintiff the overtime wages lawfully due to her under the FLSA and the NYLL.  Specifically, at times throughout Plaintiff's employment, Defendants required Plaintiff to work, and Plaintiff did work, in excess of forty hours in a week, yet Defendants failed to compensate Plaintiff at the statutorily-required overtime rate of one and one-half times the weighted average of her regular rates of pay for all hours worked in excess of forty in a week. Instead, Defendants paid Plaintiff at her straight-time rates of pay for her first forty hours each week, and then required Plaintiff to delay reporting hours worked in *excess* of forty until another week when she worked *fewer* than forty hours, thereby avoiding paying her overtime premium pay.

3.      Defendants further violated the NYLL by failing to provide Plaintiff with accurate wage statements on many of her paydays, or with any wage notice upon hire.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 29 U.S.C. § 201, *et seq.*  The supplemental jurisdiction of the Court is invoked pursuant to 28 U.S.C. § 1367 over all claims arising under New York law.

5.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

6.      At all relevant times herein, Plaintiff worked for Defendants in New York, and was an "employee" who was employed "in domestic service" entitled to protection as defined by the FLSA and the NYLL.

7.      At all relevant times herein, Defendant PCCS was and is a non-profit corporation organized and existing under the laws of New York, with its principal place of business located at 150 Granite Avenue, Staten Island, New York 10303.  Additionally, PCCS was and is a provider for the New York State OPWDD Self-Direction program.

8.      At all relevant times herein, Defendant Avila was and is a designated self-directed employer, employing Plaintiff and other individuals at her home on Staten Island.  In her role as a self-directed employer, Avila - - along with PCCS - - was and is jointly responsible for all matters with respect to determining, for those employees who work in her home and who care for her child outside of her home, their rates and methods of pay and hours worked.  Furthermore, Avila had and exercised the power to hire and fire those employees, including Plaintiff.

9.      At all relevant times herein, Defendants were and are "employers" within the meaning of the FLSA and the NYLL, as Plaintiff was a domestic service worker providing services through PCCS for Defendant Avila's disabled child by working in and around Defendant Avila's private home.  Additionally, despite its non-profit status, PCCS was and is an "enterprise" within the meaning of the FLSA in that PCCS's qualifying annual business exceeded and exceeds $500,000, it employs and employed two or more employees, and PCCS provided its services by

routinely competing in the marketplace with other commercial enterprises that provide similar services, and therefore it was and is engaged in interstate commerce within the meaning of the FLSA so as to be subject to its provision.  To that end, PCCS: uses and used products, supplies, and other materials in the course of its business, such as medical supplies, much of which originates in states other than New York that are then used in New York; and competes with other for-profit business entities to provide health and companionship services for the physical and/or mentally infirmed by administering a program funded by the New York state and federal governments. Defendant PCCS derived a substantial portion - - and indeed virtually all - - of its yearly net revenue from these, and other, commercial activities, the combination of which subjects PCCS to the FLSA's overtime requirements as an enterprise.

## BACKGROUND FACTS

10.     Defendant PCCS is a non-profit corporation based on Staten Island, New York, which competes with other non-profit and for-profit businesses to work as a provider of the New York State OPWDD Self-Direction program, which provides medical care and/or companionship services for individuals with developmental disabilities.

11.     Defendant Avila was and is the designated self-directed employer for her disabled child, who was and is a participant in the OPWDD Self-Direction program managed by PCCS.  In that regard, Avila exercised and exercises authority with respect to all personnel-related decisions for care providers working in her home and caring for her child, including hiring and firing employees, setting employees' rates and methods of pay, and determining employees' work responsibilities and schedules in the first instance, including all of those decisions with respect to Plaintiff.

12.     Defendants together acted as Plaintiff's joint employer, in that: both Defendants employed Plaintiff at Defendant Avila's physical home, with Plaintiff providing direct care to Avila's child; both Defendants can and do shift as a unit from one putative joint employer to another, in this case Defendant Avila utilizing PCCS as its OPWDD Self-Direction program administrator to handle staffing Avila's needs to care for her child, while PCCS provides and provided similar services for numerous other clients in other homes and habilitation programs aside from Avila; Plaintiff performed a discrete job as a caregiver / Direct Support Professional along with other workers who performed the same tasks, integral to the care of Defendant Avila's child; responsibility for paying and controlling Plaintiff can and did pass from PCCS to Avila in that Avila determined Plaintiff's schedule and rate/rates of pay, communicated those rates to PCCS, PCCS paid Plaintiff her wages, and Avila determined whether/when to fire/replace Plaintiff and PCCS offered Plaintiff employment elsewhere as a result; and Defendant Avila directly supervised Plaintiff's work while Defendant PCCS handled all administrative aspects of Plaintiff's job.

13.     To that end, Avila, through PCCS, hired Plaintiff on June 1, 2016, to work at Avila's home on Staten Island, New York, where Plaintiff worked as a caregiver / Direct Support Professional until Avila terminated her employment following her maternity leave on or around November 21, 2019.

14.     In her role as a caregiver / Direct Support Professional, Plaintiff was responsible for providing community and in-home habilitation services for Defendant Avila's special needs child, by assisting her with all of her activities of daily living both inside her home and in public away from her home.  Moreover, Defendant Avila required Plaintiff to complete various other

non-caregiver tasks around her home, such as watering her plants, feeding her birds, doing her laundry, and cleaning up the house.

15.    Throughout Plaintiff's employment, Defendants typically required Plaintiff to work different schedules based on Defendant Avila's travel, work, and vacation schedules.  When Defendant Avila was not traveling, working extra time, or vacationing, Plaintiff typically worked thirty hours per week.

16.    However, under three different circumstances, Defendants required Plaintiff to work, and Plaintiff did in fact work, in excess of forty hours in a week, to wit: (a) when Defendant Avila returned home from work late; (b) if Plaintiff needed to cover shifts for other Direct Support Professionals caring for Avila's child who were absent from work; or (c) when Avila went on vacation from time to time each year.  Under each of these three circumstances, Plaintiff's working time increased beyond thirty hours to upwards of seventy-two hours in a week, as she worked from Mondays through Thursdays or Fridays, with her hours ranging from either 7:30 a.m. to 7:00 p.m., or from 3:00 p.m. through 9:00 a.m. the following day.

17.    For her work, Defendants paid Plaintiff at a rate of $20.00 per hour for hours that she worked inside Avila's home, and $23.00 per hour for hours that Plaintiff worked outside of Avila's home assisting Avila's child in her community habilitation programs, for up to forty hours each week.  If Plaintiff worked beyond forty hours in a week, Defendant Avila directed Plaintiff to report those additional hours in another subsequent week where Plaintiff worked fewer than forty hours.  When this occurred, Defendants only paid Plaintiff at her straight-time rates of pay for Plaintiff's overtime hours.  Thus, throughout the entirety of Plaintiff's employment, Defendants failed to pay Plaintiff at the rate of one and one-half times the weighted average of her regular rates of pay for any hours that Plaintiff worked in a week in excess of forty.

18.     By way of example only, during the week of August 11 through August 17, 2019, due to Avila taking vacation, Defendants required Plaintiff to work, and Plaintiff did in fact work, seventy-two hours according to the following schedule:

Sunday, August 11, 2019: off;

Monday, August 12, 2019: 3:00 p.m. until 9:00 a.m.;

Tuesday, August 13, 2019: 3:00 p.m. until 9:00 a.m.;

Wednesday, August 14, 2019: 3:00 p.m. until 9:00 a.m.;

Thursday, August 15, 2019: 3:00 p.m. until 9:00 a.m.;

Friday, August 16, 2019: off (after 9:00 a.m.);

Saturday, August 17, 2019: off.

19.     In exchange for her work this week, Defendants paid Plaintiff for forty hours at her regular rates of pay, and paid Plaintiff for her remaining hours that Plaintiff worked in excess of forty for this week at her straight-time rate of pay in subsequent weeks where Plaintiff worked fewer than forty hours.

20.     Defendants, through PCCS, paid Plaintiff on a bi-weekly basis.

21.     On many occasions when Defendants paid Plaintiff, Defendants failed to provide Plaintiff with a wage statement that accurately listed, *inter alia*, Plaintiff's actual hours worked for that week or her accurate statutorily-required overtime rates of pay for the hours that she worked over forty during those weeks.

22.     Defendants also did not provide Plaintiff with any wage notice at the time of her hire, let alone a notice that accurately listed, *inter alia*: Plaintiff's rate or rates of pay and basis thereof; whether she would be paid by the hour, salary, or in another manner; allowances, if any, claimed as part of the minimum wage, including tip or meal allowances; the regular payday

designated by Defendants in accordance with the NYLL; the name of Defendants; any "doing business as" names used by Defendants; the physical address of Defendants' main office / principal place of business, and mailing addresses if different; and Defendants' telephone number.

23.     Each hour that Plaintiff worked was for Defendants' benefit.

24.     Defendants acted in this manner to minimize their labor costs and, with respect to PCCS, its overhead.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
### *Unpaid Overtime Under the FLSA*

25.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

26.     29 U.S.C. § 207(a) requires employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

27.     As described above, Defendants are employers within the meaning of the FLSA, while Plaintiff is an employee within the meaning of the FLSA.

28.     As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate her in accordance with the FLSA's overtime provisions.

29.     Defendants willfully violated the FLSA.

30.     Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times the weighted average of her regular rates of pay.

31.     Plaintiff is also entitled to liquidated damages and attorneys' fees for Defendants' violations of the FLSA's overtime provisions.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Unpaid Overtime Under the NYLL and the NYCRR*

32.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

33.     NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for all hours worked exceeding forty in a workweek.

34.     As described above, Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiff is an employee within the meaning of the NYLL and the NYCRR.

35.     As also described above, Plaintiff worked in excess of forty hours in a workweek, yet Defendants failed to compensate her in accordance with the NYLL's and the NYCRR's overtime provisions.

36.     Plaintiff is entitled to overtime pay for all hours worked per week in excess of forty at the rate of one and one-half times the weighted average of her regular rates of pay.

37.     Plaintiff is also entitled to liquidated damages, interest, and attorneys' fees for Defendants' violations of the NYLL's and the NYCRR's overtime provisions.

**THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS**
*Failure to Furnish Proper Wage Statements in Violation of the NYLL*

38.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

39.     NYLL § 195(3) requires that employers furnish employees with wage statements containing accurate, specifically enumerated criteria on each occasion when the employer pays wages to the employee.

40.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

41.     As also described above, Defendants, on all paydays, failed to furnish Plaintiff with accurate wage statements containing the criteria required under the NYLL.

42.     Pursuant to NYLL § 198(1-d), Defendants are liable to Plaintiff in the amount of $250.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

### FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Failure to Furnish Proper Wage Notice in Violation of the NYLL*

43.     Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44.     NYLL § 195(1) requires that employers provide employees with a wage notice at the time of hire containing accurate, specifically enumerated criteria.

45.     As described above, Defendants are employers within the meaning of the NYLL, while Plaintiff is an employee within the meaning of the NYLL.

46.     As also described above, Defendants failed to provide Plaintiff with any wage notice at hire, let alone one that accurately contained all of the criteria required under the NYLL

47.     Pursuant to NYLL § 198(1-b), Defendants are liable to Plaintiff in the amount of $50.00 for each workday after the violation occurred, up to a statutory cap of $5,000.00.

### DEMAND FOR A JURY TRIAL

48.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all claims in this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demand judgment against Defendants as follows:

a.      Declaring that the practices complained of herein are unlawful and in willful violation of the aforementioned United States and New York State laws;

b.      Restraining Defendants from any retaliation against Plaintiff for participation in any form of this litigation;

c.      Granting an award of all damages that Plaintiff has sustained as a result of Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law that Plaintiff would have received but for Defendants' unlawful payment practices;

d.      Granting an award of liquidated damages and any other statutory penalties as recoverable under the FLSA and the NYLL;

e.      Granting an award of reasonable attorneys' fees, as well as all costs and disbursements incurred in connection with this action, including expert witness fees and other costs;

f.      Granting an award of pre-judgment and post-judgment interest, as provided by law; and

g.      Granting such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        June 3, 2020

                                        Respectfully submitted,

                                        BORRELLI & ASSOCIATES, P.L.L.C.
                                        *Attorneys for Plaintiff*
                                        655 Third Avenue, Suite 1821
                                        New York, New York 10017
                                        Tel. (212) 679-5000
                                        Fax. (212) 679-5005

                          By:           _____
                                        MICHAEL R. MINKOFF (MRM 4787)
                                        ALEXANDER T. COLEMAN (AC 8151)
                                        MICHAEL J. BORRELLI (MB 8533)